DAVID WELLER and WIFE *vs.* JONATHAN P. ROLASON and others, legatees of John Rolason, deceased, the heirs of Jonathan A. Park, deceased, and the heirs of Nathan Park, deceased.

1. Where it is clearly the intention of the parties to convey the whole estate, equity will decree a conveyance of the fee according to the intention of the parties, notwithstanding the want of words of inheritance in the grant.

2. If a trustee dies without executing the trust vested in him, the trust survives, and equity will decree its due execution.

3. Where a testator, by his will, has directed his executor to purchase real estate, and hold it subject to certain trusts in said will named, but the deed therefor contains no declaration of the trust, the executor will, nevertheless, be declared to have been seized of the land as trustee for the purposes specified in the will.

4. One of several *cestuis que trust* cannot, by purchasing the legal title to the land which forms the subject of the trust, defeat the equitable title

VOL. II.                 B

of the other *cestuis que trust* thereto, when such purchase was made with a knowledge of their equity. The estate in his hands will be held subject to the purposes of the trust.

5. Where two or more persons having an interest in lands, claim under an imperfect title, and one of them buys in the outstanding title, such purchase will enure to the common benefit, upon contribution made to repay the purchase money.

6. But such purchaser can claim no contribution for the price paid for the legal title, from those interested with him in the equitable estate, when the title purchased by him in no wise enures to the benefit of the estate.

———

John Rolason, late of the township of Oxford, in the county of Warren, by his will, bearing date on the twenty-first of June, 1830, among other things, devised and directed that the remainder of his property should be sold for cash, and the remainder of the money applied to purchase a house and lot suitable for the family; the house and lot to be his wife's during her widowhood, and after her death, the property to be sold and equally divided among the children of the testator.

A house and lot was purchased by the executor, which was occupied by the widow of the testator during her life. After the death of the widow, Jonathan P. Rolason, one of the heirs-at-law and devisees of the testator, claiming that the deed to the executor conveyed an estate only for his life, purchased of part of the heirs of the grantee their interest in the land, and claims title thereto in his own right.

The complainants seek—*First.* To reform and amend the deed to the executor so as to conform to the agreement for the purchase, by inserting therein words of inheritance, so as to vest in the grantee an estate in fee simple, with a declaration that the same is held upon the trusts declared by the will of the said testator, for the benefit of his children.

*Secondly.* That the parties having the legal title be decreed to hold the same for the benefit of the devisees of the said testator, according to the provisions of his will.

*Thirdly.* That the land be sold under the directions of the

court, and the proceeds of the sale be distributed among the children of the testator, pursuant to the directions of his will.

*Mr. Depue,* for complainants.

The bill has two objects.

1. To correct a deed made to Jonathan A. Park, the executor of John Rolason, deceased, by enlarging the estate conveyed by the deed, from an estate for life to an estate in fee.

2. To declare the trusts upon which the conveyance was made.

The deed was made to Park as a residence for the widow of the testator for her life, and afterwards for the benefit of the heirs.  Full consideration for the fee was paid.  It was a mere clerical mistake.  J. P. Rolason, one of the heirs, discovered the defect in the title, and procured a release from the widow and heirs of the grantor, and attempts thereby to defraud his co-heirs.  His answer does not deny his knowledge of the trust, nor that the property is subject to it.

The fact that the property was purchased by the executor with the trust fund, and intended to be held for the purposes of the will, is clearly established in evidence.  It was to be held for the widow for life, and then for the heirs in *fee.*

As against the executor, the deed itself, in connection with the fact that the consideration paid belonged to the estate, is a sufficient declaration of trust.  *Hill on Trustees* 63.

As against the heirs, there is evidence on the face of the deed that an estate in *fee* was intended to be conveyed.  The grantors convey all their interest.  They covenant that they are seized in fee, and that they will warrant and defend the title forever.

Covenants will not operate to enlarge the estate beyond the operative terms of the grant, yet in equity they are evidence of intention.  *Ross* v. *Adams,* 4 *Dutcher* 160; 2 *Story's Eq.,* § 980.

By a covenant to the *heirs* of the grantee, a fee would pass by *estoppel.* *Terrett* v. *Taylor,* 9 *Cranch* 53. Equity will hold the heirs estopped. *Chamberlain* v. *Thompson,* 10 *Conn.* 243.

If the word "heirs" is omitted from a deed, the omission will be corrected, where it is obvious from the deed that the intention of the parties was to pass the fee. *Higinbotham* v. *Burnet,* 5 *Johns. Ch. R.* 184.

As the trust in the will, which was intended to be carried into effect by the deed, could only be executed by an estate in fee, it may be a question whether the deed itself does not convey a fee. *Fisher* v. *Fields,* 10 *Johns. R.* 495; *Hill on Trustees* 64.

The court will execute the trust. 2 *Story's Eq. Jur.,* § 1061; *Brown* v. *Higgs,* 8 *Vesey* 570, 574.

*Mr. J. M. Robeson,* for J. P. Rolason, one of the defendants.

THE CHANCELLOR. The testator died on the fourth of July, 1830. On the twenty-ninth of May, 1832, the executor exhibited his final account for settlement and allowance, by which it appears that there remained in his hands a net balance of $397.68. By deed bearing date on the twenty-seventh of March, 1833, Nathan Park, for the consideration of $400, conveyed to Jonathan A. Park, the executor, a house and two lots of land, containing about sixteen acres. The deed itself does not specify the purpose of the trust, but it furnishes satisfactory evidence that it was taken by the grantee, not for his own benefit, but in trust for the estate of his testator. The conveyance is made to him, not in his individual, but in his representative capacity, by the name and description of Jonathan A. Park, executor of the last will and testament of John Rolason, deceased. The consideration is acknowledged to have been paid by him in his capacity of executor. The conveyance is to him "as executor aforesaid, or to his lawful representatives as such." The

habendum and tenendum clause describes his estate and interest in the same terms. The covenant is "with the said party of the second part, or with his lawful representatives, as executor aforesaid." The warranty is unto "the said Jonathan A. Park, as executor aforesaid, or his lawful representatives." As against the grantee, the terms of the conveyance afford satisfactory evidence that the land was held by him, not in his own right, but in trust for the estate of his testator. The evidence shows that the purchase money was paid with the funds of the estate. There is, consequently, a resulting trust in favor of the estate. The evidence demonstrates the special nature and purpose of the trust. By the will of the testator, the remainder of his estate was directed to be invested in the purchase of a house and lot, suitable for the family, to belong to his wife during her widowhood, and on her death, to be sold and equally divided among the children. On the settlement of the estate, a year previous to the date of the deed, there was found in the hands of the executor a residue of $397.68, within three dollars of the price paid for the land. On the purchase of the property, the widow entered into possession and continued in the enjoyment of it during her life. The grantee never claimed title to it in his own right, or for any other purpose. There was no other trust under the will for which the estate could have been held by the executor, than that to which it was applied.

The deed, by its terms, conveys only an estate for life. The conveyance is to the grantee and his lawful representatives, not to his heirs. *Littleton*, § 1; 1 *Sheppard's Touch.* 101–2; 4 *Kent's Com.* 5; *Kearney* v. *Macomb*, 1 *C. E. Green* 189.

The application of the principle, that in a common law conveyance, the use of the word "*heirs*" is necessary to create an estate in fee, is not affected by the circumstance that the conveyance is made in trust, and that a less estate will not be sufficient to satisfy the trust. The language of Chief Justice Kent, in *Fisher* v. *Fields*, 10 *Johns. R.* 505, is

B *

applicable only to wills or instruments other than common law conveyances, as the cases cited by him abundantly prove. But the fact that the land was conveyed in trust—that an estate for life would not be sufficient to satisfy the trust, the purpose of the trust being known to the grantor—affords strong evidence that it was the intention of the parties to convey an estate in fee. This intention is also evinced by the terms of the covenant of warranty, which is in favor of the grantee and his lawful representatives *forever.* These circumstances, in connection with the facts established by the evidence, that the price paid was a full consideration for the fee of the land, and that the *cestui que trust* was permitted to hold and enjoy the land for several years after the death of the grantee, when an estate for life would have ended, afford satisfactory proof that an estate in fee was intended to be conveyed. Where it is clearly the intention of the parties to convey the whole estate, equity will decree a conveyance of the fee according to the intention of the parties, notwithstanding the want of words of inheritance in the grant. *Higinbotham* v. *Burnet,* 5 *Johns. Ch. R.* 184; *Fisher* v. *Fields,* 10 *Johns. R.* 495; *Bradford* v. *The Union Bank,* 13 *How.* 66; 1 *Story's Eq. Jur.,* § 152.

Jonathan A. Park, the executor, to whom the legal title was conveyed, will be declared to have been seized of the land as trustee, for the purposes specified in the will; and the land will be disposed of, and the proceeds applied as though the trusts were expressed in the deed. The trustee having died without executing the power, the trust survives, and equity will decree its due execution by a sale of the estate for the specified trust. 2 *Story's Eq. Jur.,* § 1061.

Jonathan P. Rolason, one of the legatees under the will of his father, of an equal share with the other children in the trust estate, has become the owner in his own right of a part of the land, having purchased the legal title from a part of the heirs of Jonathan A. Park, the grantee. But he cannot thereby defeat the equitable title of the *cestuis que trust,* for it is obvious from his answer that he purchased with

knowledge of their equity, and that he acquired the legal title for the purpose of gaining an undue advantage over those having an equal interest with himself in the equitable estate.

There is another principle equally fatal to his exclusive title to the shares purchased by him. Where two or more persons having an interest in lands claim under an imperfect title, and one of them buys in the outstanding title, such purchase will enure to the common benefit, upon contribution made to repay the purchase money. "Where," says Chancellor Kent, " two devisees are in possession under an imperfect title, derived from their common ancestor, it is not consistent with good faith, nor with the duty which the connection of the parties, as claimants of a common subject created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself." *Van Horne* v. *Fonda,* 5 *Johns. Ch. R.* 407; *Rothwell* v. *Dewees,* 2 *Black's R.* 618.

Nor can he claim any contribution for the price paid for the legal title from those interested with him in the equitable estate. The title purchased by him has in no wise enured to the benefit of their estate.

The complainants are entitled to the relief prayed for, and it will be decreed accordingly.