THOMAS H. DOUTNEY, complainant and appellant,

*v.*

FRANK D. LAMBIE, defendant and respondent.

[Submitted July 11th, 1910. Decided January 12th, 1911.]

1. Specific performance of a contract to purchase real estate will not be decreed if the marketability of the title depends on the establishment of a fact, and that fact is in reasonable doubt.

2. When the real estate in question is situate in another state and there is any fair doubt as to the law of that state on the question of marketability of title, the courts of this state should not decree specific performance as against an unwilling purchaser, especially where possible rights of strangers to the suit are involved in the determination.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevenson.

This was a bill for specific performance of a contract for exchange of real property. The defendant's property is in this state, but complainant's is in the city of New York in the district known as Morrisania. Defendant applied to a title guarantee company for a guaranty of complainant's title, which that company refused unless the question of encroachment of the front wall of the building on Park avenue were excepted from the guaranty. Defendant not being satisfied with a guaranty on those terms, refused to accept complainant's deed, and the present suit was brought to compel him to do so. The hearing was had before Vice-Chancellor Stevenson, who dismissed the bill on the ground that the title offered by complainant was unmarketable.

*Messrs. Roe & Runyon,* for the appellant.

*Mr. Robert M. Boyd, Jr.,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

Our examination of the case and briefs (there was no oral argument) satisfies us that the decree in the court below was correct. The question of marketability was one of fact, and related to the exact location of the line of Park avenue, on which complainant's building fronted. If the line was where complainant's witnesses put it, the building did not encroach upon the street, and the title was consequently good; if, on the other hand, it was where defendant's witnesses located it, there was an encroachment by the front wall of the building of approximately two inches on the highway, which the city authorities might order removed at any time.

That such a condition of things, if existing in fact, would constitute a substantial objection to the title if the land were in this state, cannot be doubted. The element of compensation for the expense of making over the front wall, if indeed that could be done without serious detriment to the property, was not in the case, complainant resting in his bill as drawn on a perfect title, going to trial on that issue, and a subsequent amendment for the purpose of bringing it into the case being denied. The question for decision, therefore, was whether the complainant's title was so plainly marketable as to require a court of equity in the exercise of a legal discretion, to decree specific performance.

In disposing of this question the vice-chancellor, following his own decisions in *Barger* v. *Gery, 64 N. J. Eq.* (*19 Dick.*) *263,* and *Potter* v. *Ogden, 68 N. J. Eq.* (*2 Robb.*) *409,* held "that where the alleged defect in the title was in respect of a fact, the title cannot be regarded as marketable, unless the proof in favor of the title as to the point of fact is so clear that a court of law would direct a verdict in favor of the title in case of a trial by a jury; and secondly, that it must also appear that the evidence which shows the title to be good, which establishes the facts on which a good title must rest, is of such a character that there cannot be any reasonable apprehension that such proof will not

be forthcoming in the future for the protection of the purchaser."

This rule is challenged by the appellant, but we need not pass upon its correctness because we do not find it necessary to invoke it in its entirety. In *Fry Spec. Perf.* § *253 et seq.,* the rule is laid down that the vendor must prove that his title is good beyond a reasonable doubt, and will not expose the defendant to litigation. Such was the character of proof required in *Sturtevant* v. *Jaques, 96 Mass. 523,* to overcome the presumption of an outstanding beneficial interest. In *Tillotson* v. *Gesner, 33 N. J. Eq. (6 Stew.) 313,* decided by this court, the record showed deeds for a nominal consideration shortly before the entry of' judgments against the grantor, and it was held (at *p. 333*) that specific performance would not be decreed unless it were shown by "strong proof" that the deeds were made *bona fide* and for a valuable consideration. It was further said in that case: "The purchaser should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, be reasonably sure that no flaw or doubt will come up to disturb its marketable value. The court cannot satisfactorily or conclusively settle a title in the absence of parties who are not before them in the suit to assert their estate or interest in the lands." These propositions are both elementary and fundamental, and we need not go outside of them to affirm the decree below. Having examined the evidence, we are satisfied that to say the very least the question of encroachment is a doubtful one, and might well lead to troublesome and vexatious litigation in the future, which might be decided adversely to the owner and compel a substantial alteration of a large apartment building. This is sufficient to render the title unmarketable and to justify, if not require, a court of equity to refuse specific performance to a vendor. It is said that this is not a vendor's suit because there is an exchange; but the fact that complainant was to get other property instead of money in exchange for his property, does not make him any the less a vendor of his own land.

The point is made that as the land in question is situate in the State of New York, the law of that state controls on the

question of marketability, and a number of decisions by the courts of that state are cited to show that the encroachment in question, if established as a fact, would not render the title unmarketable.

We do not find it necessary to go into a detailed review of those decisions, for it is obvious that our decision on a question of New York law would have no controlling effect on the courts of that state, which would be quite at liberty to take the contrary view in a subsequent litigation there; so that if we now held such an encroachment no barrier to marketability, and defendant had to take this title, he might be unable thereafter to make title to a purchaser. Hence we should not declare the title marketable, notwithstanding the encroachment, unless the decisions of the New York courts leave the matter substantially free from judicial doubt. We do not think that they do; and, on the contrary, two lawyers, who were examined in the case as expert witnesses on the New York law, testified that under that law the title was unmarketable.

Under these circumstances a decree of specific performance concluding this defendant, but in no sense binding either on the city of New York as to the fact of encroachment, or on a subsequent purchaser as to either that fact or the law of marketability, would be eminently inequitable.

The decree of the court of chancery will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, CONGDON—11.

*For reversal*—None.