The bill is by vendor against vendee for specific performance of a contract for the sale and conveyance of certain real estate in Union county. The facts are in nowise in dispute. Complainant was and is ready and willing to convey, but defendant refused to accept conveyance on the ground that the title is unmarketable, which is the sole defense set up by the answer.
Defendant's objection to the title is that the chain of title of record of the premises in question shows conveyance thereof by three deeds to one Paul J. Armour, followed by three declarations of trust by Armour in favor of Commercial Warehouse Company of New York, December 28th, 1874, and that there is no conveyance of record from Armour or the Commercial Warehouse Company to complainant or any predecessor of complainant, or anyone else.
Complainant's title is based on conveyance to it July 26th 1923, by Hippolyte De Raismes and wife, and on adverse possession by it and its predecessor De Raismes for more than twenty years, and on decree in this court in suit to quiet title.
In August, 1923, complainant filed its bill to quiet title against "the said Paul J. Armour, individually and as trustee *Page 128 
for Commercial Warehouse Company of New York, his heirs, devisees and personal representatives and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest, and the Commercial Warehouse Company of New York, its heirs, devisees and personal representatives, and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest." Decree was entered January 29th, 1924, that the said defendants (as above named) "have no estate or interest in or encumbrances upon" the lands in question (specifically describing them), "and that in respect to all said lands and premises, so far as relates to any claims thereon by or on behalf of the said defendants [naming them as above], the title of the complainant in and to the same and every part thereof is hereby determined, fixed and settled and declared to be good." Copy of the decree was duly recorded immediately in the register's office of Union county.
No proof was made in the present suit of adverse possession for over twenty years by complainant and its predecessor, complainant relying on the decree above mentioned as proof of its title. It appears by the pleadings in the quiet title suit that the title claimed by it was based on adverse possession as aforesaid.
It is, of course, elemental that equity will not compel a vendee to accept a doubtful title. The vendor's title must be good beyond a reasonable doubt, and such as will not expose the vendee to litigation. See Smith v. Reidy, 92 N.J. Eq. 586 (atpp. 589, 590), where the leading authorities are quoted.
If the issue as to the validity of vendor's title turns on a question of fact, notwithstanding that such issue of fact might be determinable by this court in favor of the validity of the title, this court will not make such determination (and decree specific performance) where the persons having the (possible) hostile claim are not parties to the suit and would not be concluded by the decree, and where the evidence would not be, to a reasonable certainty, available to the vendee for *Page 129 
his protection in the future against such hostile claim. Fahy
v. Cavanaugh, 59 N.J. Eq. 278; Sulk v. Tumulty, 77 N.J. Eq. 97; Doutney v. Lambie, 78 N.J. Eq. 277.
Hence, if in the present case the complainant's proof of title was testimony by living witnesses to show adverse possession, complainant would not be entitled to decree, as complainant, indeed, concedes. That, however, is not the situation here. Complainant's evidence of title is the decree in the suit to quiet title, a suit brought by this complainant against the persons in whom might otherwise inhere the right to assert against complainant that "paper" title, the existence whereof is pleaded by defendant in excuse of his non-performance, and brought for the very purpose of obtaining against such persons an adjudication adverse to the possibility of their maintaining any such claim of title against complainant.
I take it to be unquestionably the law that where a vendee-defendant alleges a defect in the vendor's title, and the vendor proves a final judgment or decree of record in a court of competent jurisdiction against all of such persons as might otherwise assert a hostile claim against the vendor in regard to such alleged defect, adjudicating in favor of the vendor and against such claimants the very question as to whether or not such claimants have any right against the vendor in regard to the alleged defect, the proof of such final judgment constitutes a complete refutation of the vendee-defendant's allegation of defect in title and entitles vendor to decree of specific performance (assuming that to be the sole issue between vendor and vendee). Under the elemental principles of the doctrine ofres adjudicata such a judgment or decree enures to the benefit of subsequent grantees of the party in whose favor it was rendered, and is conclusive and binding upon all subsequent representatives or successors in title or interest of the persons against whom it was rendered. Hence, the vendor's title would be good beyond reasonable doubt, and the vendee, taking title, would not be exposed to future litigation in regard thereto. (As to what is meant *Page 130 
by "being exposed to litigation," see Smith v. Reidy, supra — at p. 592, bottom.)
Now, it is evident from the record in the suit to quiet title that that suit was brought by the present complainant (vendor) to "settle the title" to these very lands and "to clear up all doubts or disputes concerning the same," under the authority of the act commonly known as the act to quiet title (4 Comp. Stat.p. 5399), as amended by the supplement P.L. 1912 p. 151, and as further amended by P.L. 1922 p. 132; that the issue set up by that bill was the very defect or question of the validity of the title of complainant to these lands as against the record or paper title in Armour and Commercial Warehouse Company, which is now set up as an issue in the present suit, and that the defendants to that suit were all persons who could or might be able or entitled, on the basis of that paper title, to dispute complainant's title to the lands.
The adjudication of the decree in that suit has been hereinbefore quoted.
None of the defendants in that suit answered or appeared; none were served with subpoena, but the proceedings for substituted service were duly had in accordance with the provisions of the amendment of 1922 (supra). The efficacy and validity of the provisions of the statute as so amended, and of the proceedings had in accordance therewith, cannot be open to question in view of the determination of the court of errors and appeals inRealty Co. v. Burghardt, 91 N.J. Eq. 120, which dealt with a similar question and situation, except that the litigation there preceded the statutes of 1912 and 1922 (supra). Obviously, the statute of 1912 was intended to, and does, remedy the legislative defect determined to exist by Hill v. Henry, 66 N.J. Eq. 150
(now overruled by Realty Co. v. Burghardt, supra), and the statute of 1922 was intended to, and does, remedy the legislative defect intimated by Vice-Chancellor Stevenson in the sixth section of his opinion in Realty Co. v. Burghardt, 90 N.J. Eq. 347
(at p. 351).
The present defendant, however, contends that the effect of complainant's decree is not an affirmative establishment or *Page 131 
adjudication of title in the complainant, but an estoppel against the defendants from asserting title. I confess that, offhand, that seems, under the circumstances, a distinction without a difference, as a practical matter, but the present determination need not be rested on such a view, for defendant's contention is contrary to the fact.
The statute (section 1) authorizes complainant to bring and maintain a suit to "settle the title * * * and to clear up alldoubts and disputes concerning the same," and by section 6 it is enacted that the final decree in such suit shall "fix and settle the rights of the parties in said lands." (Italics mine.) When consideration is had of this statutory language, and of the situation which the statute was designed to remedy (Cf.Realty Co. v. Burghardt, supra, at pp. 123, 124), and of the fact that the issue submitted by the bill in the suit to quiet title, now being examined, was the issue as to whether the apparent holders of the record title had any title or claim as against the complainant, who claim ownership in fee-simple as against such apparent record title holders by adverse possession, there can be no doubt whatever but that the court had due authority under the statute to decree that title was in complainant as against the paper title defendants, and that such is the force and effect of the decree in question, and that such decree is the equivalent of a deed from the record title-holding defendants to complainant; it establishes affirmative title in complainant as against the only persons who, under the evidence in this case, or under the alleged defect as to title set up by defendant, could or might otherwise have title. In Spottiswoode
v. Morris and Essex Railroad Co., 61 N.J. Law 322 (at p.332); unanimously affirmed, 63 N.J. Law 667, it is expressly decided that twenty years' adverse possession confers title. InYard v. Ocean Beach Association, 49 N.J. Eq. 306, a suit to quiet title, the decree adjudged title in the complainant by adverse possession (p. 309), and was unanimously affirmed. The adverse possession for twenty years vests or confers the title; the judgment or decree establishes that fact of record, and *Page 132 
this is, of course, true whether it be a judgment at law or a decree in equity.
Defendant further contends, however, that the effect of the final decree in the suit to quiet title cannot be to establish affirmative title in complainant, because by the provisions of the statute that result (conceding that it be attained by a final decree after due proofs in an actually contested case) cannot be attained by a decree by default, and that the decree in this case was by default.
Assuming that defendant is not precluded from such contention, as being a collateral attack upon the decree (Schultz v.Sanders, 38 N.J. Eq. 154; McCahill v. Equitable Life, c.,Society, 26 N.J. Eq. 531), the contention is not sound. Section 3 of the act provides that as to a defendant who suffers decreepro confesso against him, the court "shall, without further proof, decree that such defendant has no estate or interest in or encumbrance upon said lands, or any part thereof." The final decree in the present case included such a provision. But there is nothing in this section 3, nor in section 6, nor in any other part of the act which purports to say that the provisions of section 6 (that the final decree shall fix and settle the rights of the parties to the suit, i.e., the right of complainant as against the defendants as well as vice versa) shall not apply to final decrees in cases where all defendants have suffered decree pro confesso against themselves. Nor is there any basis for argument for such construction by implication. The language of section 6 is clear and express and all-inclusive, and the complainant's necessity to settle his title, for which purpose the statute was designed and intended, is just as great whether defendants appear and defend or not.
The defendant further questions the jurisdiction of this court to have entertained the complainant's suit to quiet title and render decree therein, on the ground that he should have proceeded at law, relying on Sheppard v. Nixon, 43 N.J. Eq. 627.
Assuming that it is open to defendant to raise such objection, it is sufficient to point out that that opinion expressly reiterates that the object and applicability of the *Page 133 
statute for suits to quiet title is for the relief of persons in peaceable possession with no means of contesting the adverse claim, which was precisely the situation of complainant. Nugent
v. Grassman, 91 N.J. Law 360, is in nowise an authority against the maintenance of such suit. Mason v. Home Real Estate Co.,90 N.J. Eq. 455, and Realty Co. v. Burghardt, 91 N.J. Eq. 120,
are controlling authorities in favor of the maintenance of such suit under like circumstances.
Finally, defendant argues that even though this court's determination of the objections raised by him be against him, nevertheless, they, or some of them, must still be deemed "doubtful" questions until finally determined by the court of errors and appeals, and hence defendant should not be compelled to take title, under the declarations of that court in VanRiper v. Wickersham, 77 N.J. Eq. 232, and Doutney v.Lambie, 78 N.J. Eq. 277, followed and applied in Kohlrepp v.Ram, 79 N.J. Eq. 386; Smith v. Reidy, 92 N.J. Eq. 586, and other cases. Here, again, I disagree. I think there is no reasonable doubt in respect to the several objections raised by defendant, and it follows that complainant is entitled to decree for specific performance.
Moreover, had my opinion been different as to any of the points herein considered, I should have felt bound to advise decree for specific performance in view of the determination of the court of errors and appeals in Realty Co. v. Burghardt, supra. The facts in that case are almost exactly identical with these in the case at bar. Reference to the files in the quiet title suit there involved (Siedler v. Vreeland, docket 25 p. 638) shows, in addition to the facts given in the two opinions, that service on Vreeland, his heirs, devisees and personal representatives, was had by publication only; that no defendant answered or appeared; that decree by default was entered in the same language as that of the decree in Elmora Co. v. Armour. The decree of the appellate court reversed this court's decree of dismissal and directed that a decree be entered for the relief prayed for in the bill. It is obvious that all the facts forming the basis for the objections in the instant case were present in that case, and, in fact, *Page 134 
that case was a much stronger one for defendant than the present case. The appellate adjudication that complainant-vendor is entitled to specific performance in a case where the facts are so substantially identical must needs control the present case, notwithstanding that the arguments of the present defendant based on those facts were not raised in the Burghardt Case, nor mentioned by the court in its opinion.
For that reason, and because, moreover, it was not raised by defendant, it is unnecessary to consider at length a matter which, I think, however, it might be well to mention. It is possible, of course, that a conveyance may have been made by Armour and the Commercial Warehouse Company to some one who failed to record it; that such grantee may have died leaving heirs or devisees who are still infants, and that the persons actually disseized by the adverse possession may have been such infants. In view of the rights preserved to infants under the sixteenth and seventeenth sections of the statute of limitations (forming the basis of the acquisition of complainant's title), and under the sixth section of the act to quiet title, may it not be open to argument that complainant's title is not beyond the possibility of successful attack by such possible infants (or persons non compos mentis) after removal of disability, and hence, that the title is "doubtful?"